UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNY DOMAN, et al.,

    Plaintiffs,

    v.

HEARTLAND RECREATIONAL
VEHICLES, LLC, et al.,

    Defendants.

Case No. 3:23-CV-218 JD

**OPINION AND ORDER**

In 2021, Jenny and Trent Doman bought an RV subject to a limited warranty issued by the manufacturer, Heartland Recreational Vehicles, LLC. That RV promptly burst into flames, destroying itself and several other valuable items of personal property. The Domans brought the instant suit. Defendant Heartland has filed a motion to dismiss, arguing the Doman's claims for breach of express and implied warranties should be dismissed because the Doman's did not avail themselves of the warranty's limited repair remedy. There is no dispute of whether the RV was delivered for repair under the express terms of the limited remedy; the parties agree it was not. However, the Court finds the Doman's path to recovery is not legally foreclosed under the facts alleged and therefore declines to grant the motion to dismiss. In this highly unusual case, the Domans are not necessarily barred from recovery at the motion to dismiss stage despite failing to abide by the contractual terms because they have pled allegations adequate to state several viable defenses to their obligations under the limited repair remedy. These defenses include that the remedy failed of its essential purposes, repair was a legal impossibility, and the contract must be interpreted in these unforeseen circumstances to avoid absurdity. Though the Domans must

continue to meet their burden at each stage of the litigation, at this stage, the Court denies the motion to dismiss.

### A. Facts

In December 2021, Jenny and Trent Doman, residents of Oregon, traveled to Indiana to purchase an RV. The Domans had recently purchased a Dodge Ram truck and an ATV from third parties, and they brought those vehicles with them on their trip to purchase the RV. On December 18, 2021, the Domans executed the purchase of an RV from authorized dealer Foley RV for a price of $125,672.47. The RV was subject to a limited warranty issued by the manufacturer, Heartland Recreational Vehicles, LLC.

That night, the Domans elected to stay in their new RV at the dealership before departing on a family trip to Utah. Throughout the night, the Domans experienced difficulty with the RV's heating system. They investigated and replaced a blown fuse, but the replacement fuse also blew immediately. The Domans attempted to contact the dealership about the fuse multiple times without success, and left voicemails when their calls went unanswered. In lieu of replacing the fuse again, they decided to use the electric furnace rather than the heating system to provide heat through the night.

The next morning, the Domans left the RV dealership and set out on their family trip to Utah. A few hours later, they received a call back from the dealership. The manager of the dealership instructed the family to schedule an appointment at the dealership for repair when they returned from their trip but did not indicate the repair was especially urgent. Around 8:00 PM, a warning light illuminated on the Domans' truck. When Mr. Doman pulled over to examine the origin of the warning light, he saw a red glowing light emanating from the RV's exhaust

pipe. Mr. Doman opened the RV's door, and he was shocked to see flames. The fire grew rapidly. Though another motorist assisted the Domans, and the local fire department attempted to put out the fire, they could only contain it. Within fifteen minutes of pulling over, the RV, ATV, and truck were fully engulfed in flames.

The RV, truck, and ATV were ultimately declared total losses. The Domans did not attempt to have the RV repaired after the fire. Instead, the Domans notified the RV dealer of their damages and demanded either damages or a replacement RV. They received neither.

The RV was covered by an express limited warranty issued by Heartland. The limited warranty contained a two-tier limited remedy. It reads:

> 1. If within the applicable warranty period a covered defect is found to exist, Heartland's sole and exclusive obligation is to repair any such defect.
>
> 2. If the primary repair remedy fails to successfully cure any defect after a reasonable number of repair attempts, Heartland may, as a back-up remedy, at its sole option, elect to either:
>
>> a. Pay owner diminution in value damages; or
>>
>> b. Provide a similar replacement recreational vehicle, less a reasonable allowance for the owner's use of the original recreational vehicle.

On March 17, 2023, the Domans filed the instant suit for breach of express and implied warranties, negligence, and strict product liability. Heartland moved to dismiss, arguing the Domans could not recover for breach of contract because they had not exhausted the repair remedy. Though an amended complaint has since been filed, the parties agree that the arguments presented in their briefs apply with equal force to the breach of warranty claims in the amended complaint.

**B. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). If the allegations of the complaint do not plausibly suggest that the plaintiff has a right to relief, the plaintiff has pled himself out of court. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). This can occur when the complaint includes "facts that establish an impenetrable defense to its claims." *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016). However, where the allegations of the complaint do not conclusively foreclose the right to relief and where favorable inferences would instead support a plausible claim to relief, the motion to dismiss should be denied. *Id.*; *Lonzo v. City of Chicago*, 461 F. Supp. 2d 661, 664–65 (N.D. Ill. 2006).

**C. Discussion**

Defendant Heartland argues the Domans' breach of warranty claims should be dismissed because the Domans did not fulfill their contractual duty to present the RV for repair under the warranty's limited repair remedy. Indiana law applies because the limited warranty contains a binding choice of law provision selecting Indiana law. (DE 13-1 at 5, numbered paragraph 3.) The Court finds dismissal is not appropriate because the allegations of the complaint support the inference that the Domans may have been relieved of their obligations under the limited repair

remedy because the total and sudden fiery destruction of the RV represented an unforeseen circumstance. Thus, the Domans may maintain their breach of warranty claims because the limited remedy failed of its essential purposes, undertaking the repair remedy constituted a contractual impossibility, and requiring the parties to escalate through the limited repair remedy after the vehicle's complete destruction constitutes an absurd reading of the warranty. Under any of these doctrines, the Domans' contractual duty to seek repair is excused due to the unforeseen loss of the RV, and their breach of warranty claims have therefore raised a plausible claim for relief.

### (1) Limited Remedy Failed of its Essential Purposes

Heartland argues the Domans should be barred from recovering for breach of express and implied warranty because they failed to avail themselves of the limited repair remedy. Under that provision, if a defect arises, "Heartland's sole and exclusive obligation is to repair any such defect." Courts applying Indiana law to similar limited repair remedies have found the buyer must give the manufacturer a reasonable opportunity to cure, meaning at least three chances where the defects are minor. *Zylstra v. DRV, LLC*, 8 F.4th 597, 602–03 (7th Cir). Thus, ordinarily, the Court would ask whether the Domans presented the defect for repair at least three times prior to bringing suit. *See id*. at 603. Here, however, the parties agree that the Domans did not present the RV for repair; they notified the dealer of the issue, but the vehicle was destroyed the very next day. So the question becomes whether any legal defense to the Domans' obligation to present the RV for repair exists; if it does, their allegations may state a claim. But if no defense to this obligation exists, as a matter of black letter law, the Domans' breach of warranty claims are foreclosed, and the motion to dismiss must be granted.

The Court denies the motion to dismiss because the Domans may recover despite failing to deliver the RV for repair if the repair remedy failed of its essential purposes; here, the Domans have alleged adequate facts to support that inference. A limited remedy fails of its essential purposes only "when an unexpected circumstance arises and neither party accepted the risk that such circumstances would occur." *Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1093 (N.D. Ind. 2022). Unlike unconscionability, which applies to arrangements which were oppressive at their inception, failure of a limited remedy's essential purpose is concerned "with the application of an agreement to novel circumstances not contemplated by the parties." *Cimino v. Fleetwood Enterprises, Inc.*, 542 F. Supp. 2d 869, 887 (N.D. Ind. 2008). When an exclusive remedy fails of its essential purposes, the parties are no longer bound to that remedy. *See* U.C.C. 2-719.

Here, the parties were not anticipating the RV would burst into flames, totally destroying itself, before any repair attempt could be made. The acute and immediate failure of the RV was a highly unusual event; as a matter of both law and common sense, this kind of failure is not the sort that should be assumed as an inherent risk of contracting by the parties. *See Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 736 (N.D. Ind. 2018) ("a vehicle that causes a fire is not fit for its ordinary purpose.") Therefore, the fire qualifies as an unexpected circumstance in which the limited remedy may fail of its essential purpose.

But the inquiry does not end there; even if something unexpected happened, the limited remedy will not fail of its essential purpose unless employing the remedy "will not further its purpose." *Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1094 (N.D. Ind. 2022). Therefore, in deciding whether the remedy failed of its essential purpose, the Court must determine the remedy's purpose and whether the unexpected circumstances caused it to fail its

essential purpose. *See Cimino*, 542 F.Supp.2d at 887 ("this provision should be triggered when the remedy fails of its essential purpose, not the essential purpose of the U.C.C., contract law, or of equity").

In determining the essential purpose of the limited remedy, the Court looks to the parties' intentions in contracting for the limited remedy. *See Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 953 (Ind. 2001). After examining the warranty and case law interpreting similar provisions, the Court finds the primary purpose of the limited repair remedy was to offer Heartland the opportunity to repair a defect prior to litigation while at the same time providing the purchaser with an assurance of reasonably conforming goods. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 606 (7th Cir. 2021) (describing the warranty's "bilateral obligations" and noting "a notice and opportunity regime gives the manufacturer a chance to make amends with its customer, see what went wrong with its product, learn from its errors, and evaluate how its authorized dealers are performing repairs"); *see also Raymond v. Thor Motor Coach Inc.*, No. 3:21-CV-222, 2023 WL 4930105, at *6 (N.D. Ind. Aug. 2, 2023) (describing the mutual obligations and guarantees of each party under an RV warranty with a limited repair remedy and finding plaintiff could not jump to litigation without engaging in the prescribed steps); *BAE Sys. Info. & Elecs. Sys. Integration, Inc. v. SpaceKey Components, Inc.*, 752 F.3d 72, 78 (1st Cir. 2014) (purpose of the repair remedy is to provide the buyer with the benefit of their bargain); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1042 (D.S.C. 1993), aff'd, 46 F.3d 1125 (4th Cir. 1995) ("The primary objective of a limited [repair] remedy is to provide the seller an opportunity to tender conforming goods and thereby limit his exposure risk for other damages, while simultaneously providing the purchaser with the benefit of his bargain — i.e. — conforming goods.").

With the essential purpose of the limited remedy determined, the Court finds the repair remedy failed of its essential purpose. Because there was no opportunity for the repairs to be attempted before total failure occurred due to no fault of the Domans, the essential purpose of the limited remedy is not served by strictly enforcing the limited remedy. The events as they occurred here are so unusual that the parties could not have anticipated them, and to strictly enforce the repair remedy would leave the Domans without a remedy,[1] which the Court finds was outside of the contemplation of the parties at the time of contracting. *See Cimino*, 542 F.Supp.2d at 887; *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 (Ind. 2019) ("The UCC, however, will not leave aggrieved parties without recourse to enjoy and to enforce the benefit of their bargains."). In this case, insisting upon the literal terms of the limited repair remedy does not serve the purpose of that remedy because it would deprive the buyer of the value of their bargain, the maintenance of which is a key purpose of the repair remedy. *See Kenworth*, 134 N.E.3d at 379; *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004) (finding limited remedy failed of its essential purpose when repair was impossible). By excusing both parties from their obligations under the limited repair remedy, the Court approximates the intentions of the parties in contracting, rather than allowing strict enforcement to operate as a post-hoc get-out-of-jail-free card for the manufacturer.

Moreover, under these unique circumstances, *Zylstra* does not foreclose the possibility that the repair remedy failed of its essential purposes. In *Zylstra*, the Seventh Circuit held that a reasonable opportunity to repair under Indiana law means at least three opportunities to repair.

---

[1] The Domans would be left without a remedy because products liability actions in Indiana cannot recover for the product itself. *Progressive Ins. Co. v. Gen. Motors Corp.*, 749 N.E.2d 484, 487 (Ind. 2001). "In sum, Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005).

*Zylstra v. DRV, LLC*, 8 F.4th 597, 602 (7th Cir. 2021). Courts applying Indiana law have cited *Zylstra* extensively when dismissing or granting summary judgment in RV cases in which minor defects are presented for repair fewer than three times. *See Massey v. Nexus RVs, LLC,* --- F.Supp.3d ---, No. 3:19-CV-334, 2023 WL 4861979 (N.D. Ind. June 30, 2023*); Kutz v. Jayco, Inc.*, No. 3:20-CV-281, 2023 WL 5898512, at *2 (N.D. Ind. Sept. 7, 2023). However, *Zylstra* also said, "Although in *Mathews* we stated that two chances is not a reasonable opportunity to cure the defects such that the warranty failed of its essential purpose, we reserve judgment as to whether, in the case of a major defect that made the RV unusable in any manner, we would require the purchaser to present the vehicle three times." *Id.* The Court finds the instant case presents just such a major defect; one can hardly contemplate a defect more extreme than the total fiery loss of the RV. Given this exception, the Court does not strictly apply the literal terms of the three-attempts rule to this inarguably major defect.

Still, the careful observer may note that even in *Zylstra*, the Court did not decide whether a debatably irreparable sewage waste smell constituted a major defect because the Court found dispositive that the smell was not presented for repair even once, and therefore the limited repair remedy had not failed of its essential purposes. Read without nuance, this may lead one to believe the Domans are automatically foreclosed from recovery because they, too, provided only notice and did not present the vehicle for repair even once. However, the Seventh Circuit was not considering a vehicle that had been destroyed before the plaintiff had reasonable opportunity to present it for repair, and there was no contention that it was impossible to present the vehicle for repair. Given this disparity, the Court finds *Zylstra's* conclusion does not control here. The Court instead finds that the fire not only constituted a major defect under *Zylstra*, but because

unexpected circumstances made it impossible to seek repair, the repair remedy failed of its essential purposes despite the lack of repair attempts.

Because the repair remedy failed of its essential purposes, the Court now turns to the backup remedy, which provides that Heartland may pay either diminution in value damages or provide a similar replacement recreational vehicle. *See Enterprises v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1049 (D. Kan. 1990) (a backup limited remedy does not fail of its essential purpose even if the first limited remedy does). The Domans availed themselves of the backup remedy via a demand letter seeking damages or a replacement vehicle; Heartland provided neither. Accordingly, because the Domans fulfilled their obligation to notify Heartland under the backup remedy, and Heartland has chosen for some reason not to honor that remedy, the Domans have satisfied the conditions of the backup remedy and now may sue for breach of warranty under the terms of the warranty. *See* 15 U.S.C. § 2304(b)(1).

Because the repair remedy failed of its essential purpose and the backup remedy was satisfied, the Domans have satisfied the conditions precedent to suit under the limited warranty. They have stated a basis for recovery, and their breach of warranty claims survive motion to dismiss.[2]

### (2) Impossibility

The Domans have argued the contractual doctrine of impossibility also relieves them of their obligations under the repair remedy. The Court finds this persuasive. As with the Court's

---

[2] This holding should not be read to allow the exception to swallow the rule. As Judge Leichty wisely noted, "A remedy will rarely fail its essential purpose." *Martin v. Thor Motor Coach Inc.*, 602 F. Supp. 3d 1087, 1093 (N.D. Ind. 2022).

consideration of failure of essential purpose, here, the Court considers only the limited repair remedy and whether the Domans were relieved of their obligations under that provision.

"Impossibility has been defined as where the performance of a contract becomes impossible, non-performance is excused, and no damages can be recovered. To invoke impossibility, one must demonstrate that performance is not merely difficult or relatively impossible, but absolutely impossible, owing to the act of God, the act of the law, or the loss or destruction of the subject-matter of the contract." *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 378 (Ind. Ct. App. 2012). Impossibility presumes an extraordinary and unpreventable event. *Kruse, Kruse & Miklosko, Inc. v. Beedy*, 353 N.E.2d 514, 527–28 (1976). "The standard explanation for the doctrine is that nonperformance is not a breach if it is caused by a circumstance the non-occurrence of which was a basic assumption on which the contract was made." *Wisconsin Elec. Power Co. v. Union Pac. R. Co.*, 557 F.3d 504, 505 (7th Cir. 2009) (*citing* Restatement (Second) of Contracts, introductory note to ch. 11, preceding § 261 (1981), quoting U.C.C. § 2–615). Though impossibility is generally an affirmative defense, the Domans argue the warranty creates bilateral obligations — *see Zylstra*, 8 F.4th at 606 — and the doctrine of impossibility excuses them of their obligation to present the RV for repair.

Here, the total destruction of the RV no doubt fits the description of "loss or destruction of the subject-matter of the contract." *Wagler*, 980 N.E.2d at 378; *Hipskind Heating & Plumbing Co. v. Gen. Indus., Inc.*, 246 Ind. 215, 204 N.E.2d 339, 216 (1965) (excusing both parties from duty to repair when subject of contract was destroyed by fire). And Indiana courts have found the total destruction of the subject matter of a contract via fire to relieve a contracting party of its obligations with regard to the property. *Cf. Fam. Video Movie Club, Inc. v. Home Folks, Inc.*, 827 N.E.2d 582, 587 (Ind. Ct. App. 2005) (relieving offeror of obligation to buy building where

it burned to the ground before offer was accepted and writing, "The fiery destruction of [defendant]'s building made it impossible for [plaintiff] to get what it had bargained for. The unexpected and premature destruction of a significant portion of the subject matter of the offer made it unreasonable to continue the time for [defendant] to accept the offer."). Further, it appears it is literally impossible under the terms of this contract to repair the RV if it is totally destroyed, as the terms of the limited remedy distinguish repair from replacement.[3] So, as a preliminary matter, this appears to be the sort of occasion where an impossibility defense to the buyer's obligations under the limited remedy would seem appropriate.

In order to find an impossibility defense is truly viable, the Court must be certain that the intervening event excusing non-performance was not anticipated by the parties. Because impossibility presumes an extraordinary and unpreventable event, it would not be appropriate to apply this defense where the parties anticipated the risk of this event and allocated that risk amongst themselves. *See Kruse, Kruse & Miklosko, Inc. v. Beedy*, 353 N.E.2d 514, 527–28 (Ind. Ct. App. 1976). However, "negotiating parties cannot anticipate all the contingencies that may arise in the performance of the contract; a legitimate judicial function in contract cases is to interpolate terms to govern remote contingencies — terms the parties would have agreed on explicitly if they had had the time and foresight to make advance provision for every possible contingency in performance." N. *Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co*., 799 F.2d 265, 276 (7th Cir. 1986) (applying Indiana law). As noted above, the fire represented an unexpected circumstance that altered the meaning of the parties' performance under the limited repair remedy. That the intervening event (the fire) is a more extreme version of allocated risks

---

[3] The Court does not presume the parties intended to contract to some tortured definition of these common words that may implicate the Ship of Theseus thought experiment.

(such as electrical defects) does not mean the parties anticipated a fire and allocated the risk to the buyer. *See Kruse*, 353 N.E.2d at 527–28 (tempest destroying a ship creates impossibility, but parties should be assumed to contract with the possibility of adverse winds in mind). Because the fire was truly unanticipated and destroyed the subject of the contract, the RV, the doctrine of impossibility relieves the parties of their obligations under the repair remedy. Therefore, the Domans' failure to seek repair is not dispositive, and they have stated a claim for breach of warranty.

### (3) *Avoiding Absurdity*

Finally, though not raised by the parties, the Court notes one addition rationale under which the Domans' claim might survive: the principle that absurd constructions of contracts should be avoided where possible. Generally, "when interpreting the meaning of the words used in a contract, they should be given their plain, ordinary, and popularly accepted meanings." *USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 539 (Ind. 1997). "However, if the plain and ordinary meaning would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, then the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, but no further." *Id*. Where an extreme and unanticipated scenario collides with a contract's terms, the rote application of the contractual terms may result in an outcome the parties never would have assented to had they anticipated it. In that case, interpreting the contract to avoid absurdity is appropriate.

Here, the absurdity of the instrument strictly applied, as Heartland argues, is evident: it would require the buyer to present the RV to a dealership for repair three times and for Heartland

to fail that repair after being given considerable opportunity.[4] Of course that repair will fail — repair is a literal impossibility — so requiring the Domans to present the RV for repair could serve only as a delay tactic. Requiring the parties to engage in this dance despite its obvious futility is an absurd result and one the Court will not endorse. It is the Court's duty, then, to read in a term the parties no doubt would have consented to had they anticipated this scenario: if the RV is destroyed through no fault of the parties before either party has a reasonable opportunity to fulfill their obligations, the parties are relieved of their duties under the repair remedy.

On this point, the Court finds *Merheb v. Illinois State Toll Highway Authority* instructive. 267 F.3d 710, 713 (7th Cir. 2001). In *Merheb*, an employee was discharged after an explosive and threatening outburst at work. The employee's employment contract specified a 4-step progressive disciplinary process for performance improvement, where the parties were to escalate to the next disciplinary step if the prior step proved ineffective. Upon his discharge, the employee sued, alleging his employment contract was violated because the business did not exhaust the steps of the process and instead jumped straight to termination. Relying on the doctrine of absurdity, the Seventh Circuit found in favor of the employer, calling the employee's literal reading of the contract "insane." The Seventh Circuit took the proposed construction to its logical end, noting that under strict construction, "if [plaintiff] had killed [coworker], he could have received only an oral reprimand, and then if he had killed [second coworker], only a written one." *Id*. Of its choice to read absurdity out of the contract, the court wrote:

> "Human foresight is limited. Not all contingencies can be anticipated and provided for in a contract. Attempting to do so would make the process of contract formation cumbersome and expensive beyond reason. An important function of contract law

---

[4] It's unclear under the allegations whether any portion of the RV survived unburnt. The allegations state that the RV was a total loss and engulfed entirely in flames. The absurdity of this construction is greater yet if it is the case the Domans would have to present a bag of ashes for repair, but it is not defeated in the event some small portion of the RV was not reduced to dust.

14

is to fill the interstices of a contract — in effect to complete the contract — by interpolating terms reasonably to be inferred from the essential terms, purpose, context, and character of the parties' deal." *Id*.

Similarly, here the contract anticipated a series of minor issues for which a progressive remediation process was sensible. However, an unanticipated and extreme event made the progressive step process requirement ridiculous in context. Accordingly, it is appropriate to read in a term governing unanticipated and extreme failures, and it is fitting that the terms governing such failures treat them differently than anticipated failures.

Worse yet, the strict application of the limited remedy would bar recovery in the event of cataclysmic failures, but not minor failures, the former of which is clearly a greater deviation from the expected performance of the product than the latter. It would be absurd to find these parties intended to make right minor deviations but totally eviscerate the buyer's ability to recover in the event of an extreme failure. On this point, the Court finds persuasive *Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols., LLC*, 8 F.4th 642, 653 (7th Cir. 2021) (applying Indiana law). In that case, the defendant argued that the ordinary meaning of the terms of the contract foreclosed recovery for lost profits. However, the contract was for profit collection services, and defendant's poor performance meant the plaintiff failed to collect a significant amount of revenue due. In short, the defendant's interpretation would mean the plaintiff contracted for services where no meaningful recovery could be had in the event of breach. The Seventh Circuit rejected defendant's reading, writing, "The suggestion that the parties drafted the contract to ensure that damages would be available [only in an] improbable scenario but to bar any meaningful accountability for the central purpose of the contract borders on the absurd." *Id*. Here, too, defendant's reading would eviscerate the central purpose of the contract: to provide some assurance that the product purchased is at least minimally conforming

or can be made so in a reasonable time. It would not further the purpose of this contract to bar recovery in the case of an extreme and catastrophic defect, which is no doubt the ultimate indication of a nonconforming product. For these reasons, after examining the contract and guiding precedent, the Court finds the contract should be interpreted to avoid absurdity. In this unusual circumstance, that means both parties are relieved of their obligations under the limited repair remedy provision.

### D.  Conclusion

Because several legal defenses to the Doman's obligations under the limited repair remedy remain viable, the plaintiffs have not pled themselves out of court, and their breach of warranty counts state a plausible claim for relief. The motion to dismiss (DE 12) is denied.

SO ORDERED.

ENTERED: October 12, 2023

/s/ JON E. DEGUILIO
Judge
United States District Court